MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 5
Docket:      Cum-16-544
Argued:      October 12, 2017
Decided:     January 23, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

STATE OF MAINE

v.

FOSTER BATES

MEAD, J.

[¶1]  Foster Bates appeals from a judgment entered by the trial court (Cumberland County, *Cole, C.J.*) denying his motion for a new trial, which he brought pursuant to the post-conviction DNA analysis statute, 15 M.R.S. §§ 2136-2138 (2017).  Bates contends that the court erred or abused its discretion by (1) finding that he failed to show by clear and convincing evidence that new DNA evidence admitted at the hearing on his motion made it probable that a different verdict would result from a new trial; (2) declining to consider evidence pointing to an alternative suspect upon finding that the proffered evidence did not concern the new DNA evidence; and (3) failing to consider "all

2

the other evidence in the case" as required by 15 M.R.S. § 2138(10)(C)(1).[1] We discern no error and affirm the judgment.

## I. BACKGROUND

[¶2] In 2002, after a jury trial, Bates was convicted of the 1994 sexual assault and murder of Tammy Dickson; the facts are reported in our decision affirming the judgment. *State v. Bates*, 2003 ME 67, ¶¶ 2-8, 822 A.2d 1129. Bates's petition for post-conviction review was denied by the Superior Court in

---

[1] The statute provides:

> **10. Standard for granting new trial; court's findings; new trial granted or denied**. If the results of the DNA testing under this section show that the person is not the source of the evidence, the [defendant] must show by clear and convincing evidence that:
>
> . . . .
>
> **C**. All of the prerequisites for obtaining a new trial based on newly discovered evidence are met as follows:
>
> > **(1)** The DNA test results, when considered with all the other evidence in the case, old and new, admitted in the hearing conducted under this section on behalf of the person would make it probable that a different verdict would result upon a new trial.
> >
> > . . . .
>
> For purposes of this subsection, "all the other evidence in the case, old and new," means the evidence admitted at trial; evidence admitted in any hearing on a motion for new trial pursuant to Rule 33 of the Maine Rules of Unified Criminal Procedure; evidence admitted at any collateral proceeding, state or federal; evidence admitted at the hearing conducted under this section relevant to the DNA testing and analysis conducted on the sample; and evidence relevant to the identity of the source of the DNA sample.

15 M.R.S. § 2138(10) (2017).

2007, and we denied his request for a certificate of probable cause to appeal from that judgment.

[¶3]  In April 2008, the trial court (*Crowley, J.*) granted Bates's motion, made pursuant to 15 M.R.S. § 2137, to conduct post-conviction mitochondrial DNA (mtDNA) testing[2] on several items, including a green sock that had been found in the victim's mouth.[3] *See Bates*, 2003 ME 67, ¶ 3, 822 A.2d 1129.  The court noted that the Maine State Police Crime Laboratory did not conduct mtDNA testing itself, but the laboratory had an arrangement with the FBI to perform the test.  In April 2010, the Crime Laboratory submitted a report to the court.  The report stated that the green sock was "not tested at this time.  The FBI laboratory will not perform Mitochondrial DNA analysis on potential epithelial or 'touch' DNA extractions."  The report noted that the sock "remain[ed] at the Crime Laboratory and [was] available for possible future testing."

---

[2] The court noted that mtDNA testing "is not as compelling as nuclear DNA testing but . . . can be used to conduct analysis of evidence that is damaged, degraded or very small in amount."

[3] A summary of DNA testing conducted in the case that was prepared by the State in 2005 indicated that the sock had been tested by the Maine State Police Crime Laboratory in September 2001 and again in July 2002.  The first test resulted in "[n]o sperm/DNA found," and the second test resulted in "[n]o DNA profile obtained."  A forensic DNA analyst testified at Bates's trial that the Crime Laboratory had been using an advanced form of DNA testing known as polymerized chain reaction (PCR) testing since 1998.

4

[¶4]   In 2011, by agreement, Bates retained Bode Technology, an independent laboratory in Virginia, to conduct additional DNA testing on certain items, including the green sock.  Bode reported that a Y-STR profile[4] obtained from the sock's exterior was consistent with a mixture of three or more individuals, including a major contributor who could not have been Bates or William Quinn, a man discussed at trial who had an "on again/off again" relationship with the victim and who found her body.  *Id.* ¶ 2.  Bode reported that the victim's ex-husband "cannot be excluded" as the major contributor, but its report did not calculate the probability that he was the contributor.  As to the minor contributors, the report drew no conclusion as to whether any person was included or excluded "[d]ue to the limited data obtained."

[¶5]   Bode reported that a partial Y-STR profile taken from the interior toe region of the sock was consistent with a mixture of at least two individuals from which Bates could be excluded, and from which the victim's ex-husband and Quinn, among others, "cannot be included or excluded."  Once again, the report did not include any probabilities that a particular male was a contributor to the mixture.

---

[4] The Bode report described the Y-STR test as analyzing "loci specific to the male Y chromosome," and noted that "[t]he Y chromosome is inherited paternally.  A Y-STR match cannot exclude any paternal relatives."

[¶6]  In February 2014, Bates moved for a new trial pursuant to 15 M.R.S. § 2138(10), asserting that the DNA found on the sock, when considered with all of the other evidence in the case, made it probable that a retrial would result in a different verdict.  In December 2014, the hearing on the motion was continued at Bates's request while he investigated a new alternate suspect who allegedly made incriminating statements near the time of the murder.  A report from Bode released in April 2015 stated that the new alternate suspect was excluded as a major contributor to the Y-STR profile on the exterior of the sock, and could not be included or excluded as a contributor to the partial mixture on the interior toe region.

[¶7]  The court held an evidentiary hearing on June 13, 2016, and took the matter under advisement.  It subsequently denied the motion by written order, concluding that Bates "has not presented such clear and convincing evidence that the new evidence, in light of all of the evidence already in the record, would create a different result in a new trial."  Bates appealed.

[¶8] Four months after filing his notice of appeal, Bates moved for further findings of fact and conclusions of law in the trial court and moved this Court to allow the trial court to act on the motion while his appeal was pending.  We denied the request.

## II.  DISCUSSION

### A.     New DNA Evidence

[¶9]  Bates and the State agree that because Bates was not the source of the DNA found on the sock, his motion for a new trial turned on whether he proved by clear and convincing evidence that "[t]he DNA test results, when considered with all the other evidence in the case, old and new, admitted in the hearing . . . would make it probable that a different verdict would result upon a new trial."  15 M.R.S. § 2138(10)(C)(1).[5]

[¶10]  We recently stated the standard of review:

> We review a court's factual findings on a motion for a new trial for clear error.  We review the court's interpretation of the post-conviction DNA analysis statute de novo.  When a court has reached findings that are supported by the record and has interpreted and applied the statute properly, the court's ultimate decision whether to grant a new trial is reviewed for an abuse of discretion.  Additionally, when reviewing on appeal findings of fact that must be proved by clear and convincing evidence, we determine whether the factfinder could reasonably have been persuaded that the required factual finding was or was not proved to be highly probable.

*State v. Dechaine*, 2015 ME 88, ¶ 13, 121 A.3d 76 (alteration, citation, and quotation marks omitted).

---

[5]  The statute imposes four additional requirements.  *See* 15 M.R.S. § 2138(10)(C)(2)-(5) (2017).  At the hearing on Bates's motion, the State conceded that those requirements had been met.

[¶11]  The trial court did not err by concluding that Bates failed to meet his high burden of proof with regard to the new DNA evidence recovered from the sock.  In sum, it does little more than demonstrate that Bates was not the man who left that DNA there.  Bates argues that that finding alone contributes significantly toward meeting his burden to prove that a new trial would result in a different verdict because if he had touched the sock then his DNA would almost certainly have been found on it.  There is no evidence in this record, however, that would allow a fact-finder to find that possibility—that Bates did not touch the sock—more likely than others, i.e., that Bates touched but did not leave ("shed") his DNA on the sock, that he wore gloves, or that he touched the sock in a location that was not sampled.

[¶12]  More to the point, the sock DNA has no definitive connection to the crime, in that it could have been left by someone at a time and in a manner unrelated to the victim's murder, *see id.* ¶ 34, and it does not identify the male who left it on the sock; rather, the Bode report only states that three men— Quinn, the victim's ex-husband, and the new alternate suspect—could neither be included nor excluded as contributors to the DNA mixtures found on and in the sock, although Quinn and the new alternate suspect were excluded as the major contributor of the DNA found on the sock's exterior.

8

[¶13] Absent any calculation of the statistical probability that one of the three men Bates points to actually left his DNA on the sock, the Bode report's finding that they cannot be excluded as contributors, given the facts of this case, would do little to cause a new jury to return a different verdict. In contrast to the Bode result affirmatively excluding Bates as a contributor, which might persuade a jury that Bates did not touch the sock, a result that someone "cannot be included or excluded" does nothing to tell the jury who, among the universe of males who could potentially leave a Y-STR sample, did touch it, or when he touched it.[6]

[¶14] In attempting to portray the DNA found on the sock as more compelling than it is, Bates incorrectly asserts that our decision in *Dechaine* stands for a general rule that "'cannot exclude' evidence is 'inculpatory' evidence." In that case, Dechaine had several pieces of evidence that were closely connected to the victim tested for DNA by an independent laboratory. *Id.* ¶ 22. At a hearing on Dechaine's motion for a new trial, his expert testified that as between Dechaine and an alternate suspect whom Dechaine identified,

---

[6] The situation presented by the sock DNA evidence here is much like one that is often presented in blood-type testing, which was routinely used in criminal investigations before DNA testing became commonplace. Using blood-typing, if, hypothetically, the perpetrator of a crime left a type A-positive blood stain at the scene and a suspect had type A-negative blood, then the suspect could be conclusively ruled out as the contributor of that stain, but no one who had type A-positive blood could be identified as the person who did leave it. Likewise, the sock DNA can exclude Bates, but it can identify no one.

only Dechaine could not be excluded from any of the items tested as the contributor of the DNA; the alternate suspect was excluded as the contributor to one of them. *Id.* ¶ 23-24.

[¶15]  We said that in that context the DNA testing did "not help Dechaine's cause, in that it was, to the limited extent that . . . [it was] useful, inculpatory and not exculpatory.  The experts all testified that only Dechaine, of the identified males compared, could not be excluded as a sole contributor of the male DNA found." *Id.* ¶ 33.  *Dechaine* did not hold that a "cannot exclude" result on a DNA test is inculpatory per se.  We concluded that on the particular facts of that case, where Dechaine offered evidence that he could not be excluded as the contributor of the DNA at issue and the alternative suspect whom he identified could be excluded, the result was "to [a] limited extent . . . inculpatory." *Id.*

[¶16]  In this case there are three men who cannot be excluded as contributors to the sock DNA, but, absent any calculation of statistical probabilities, there is an unknown—potentially countless—number of other males who fall in the same category.  No member of a limited group is identified as the sole person who, by process of elimination, could have left the DNA on the sock.  The factual situation we discussed in *Dechaine* is not presented here,

10

and the conclusion we reached in the context of that case is inapposite to these facts.

[¶17] Bates's burden at the hearing was to show by clear and convincing evidence that the limited usefulness of the new DNA evidence found on the sock made it "probable" that a different verdict would result from a new trial "when considered with all the other evidence in the case," including "the evidence admitted at trial." 15 M.R.S. § 2138(10)(C)(1). That evidence included (1) that for years after the murder Bates denied having had any sexual relationship with the victim, and only after more technologically-advanced DNA testing matched him to sperm cells taken from the victim's vagina did Bates change his account and testify that in the course of a sexual affair with the victim he had consensual sexual intercourse with her the night before the murder; (2) Bates's ex-wife testified that on the night of the murder he left their apartment at approximately 10:00 p.m. and did not come home until 3:00 a.m. the next morning; (3) Bates's coworker testified that Bates said he had been to the victim's apartment on the night of the murder; and (4) twice in the month preceding her murder, the victim had expressed fear of Bates to a neighbor, including one incident where she told the neighbor that she had awoken in the

middle of the night to find Bates sitting on her bed and stroking her hair. *Bates*, 2003 ME 67, ¶¶ 4-8, 822 A.2d 1129.

[¶18] Considering the entire record, as 15 M.R.S. § 2138(10)(C)(1) directs, we discern no abuse of discretion in the trial court's conclusion that Bates failed to meet his high burden to show that the new DNA evidence recovered from the sock would result in a different verdict at a new trial. *See Dechaine*, 2015 ME 88, ¶ 13, 121 A.3d 76.

B.   Alternate Suspect

[¶19] Bates contends that the court erroneously construed section 2138(10)(C)(1) when it declined to consider evidence concerning the new alternate suspect who could not be included or excluded as a contributor to the sock DNA. That evidence included (1) a 2014 statement given to Bates's attorney by a woman who reported that her sister called her the morning after the 1994 murder saying that the sister's then-boyfriend (Bates's new alternate suspect) "had just come home drunk and in a rage" "screaming . . . that he killed a girl and there was a baby in the playpen"; and (2) the testimony of a woman at the hearing on Bates's motion that she had seen the victim alive on the night of the murder after first seeing Bates leave the victim's apartment following an apparent sexual encounter. Bates argues that if admitted by the court, this

evidence, coupled with the DNA results discussed *supra*, would have satisfied his burden to show that he would probably obtain a different verdict at a new trial.

[¶20]  The court found that the statement made by the potential alternate suspect was new evidence based on an affidavit executed by Bates's attorney, in which the attorney averred that after working on the case for over ten years, he had never heard the alternate suspect's name mentioned.  We said in *Dechaine* that

> [t]he hearing conducted under section 2138 . . . allows the court to consider only two kinds of *new* evidence—that "relevant to the DNA testing and analysis conducted on the sample," and that "relevant to the identity of the source of the DNA sample."  15 M.R.S. § 2138(10)(C).  The statute says nothing about reopening or supplementing the evidence introduced in prior proceedings; rather, it allows the admission of DNA-related evidence that could not have been known at those prior proceedings, namely the new DNA results and their impact on identifying the perpetrator.

2015 ME 88, ¶ 39, 121 A.3d 76 (alteration and quotation marks omitted).

[¶21]  The court properly excluded the 2014 statement given to Bates's attorney because, although the new sock DNA evidence "could not have been known at . . . prior proceedings," it was not, as we have discussed, "relevant to the identity of the source of the DNA sample" in that it did not identify the new alternate suspect as the contributor, or even as a likely contributor, of the DNA

evidence. *Id.* (quotation marks omitted). All the Bode report said was that the new alternate suspect, like an unknown number of other males, could not be included or excluded as a contributor to the mixture of male DNA obtained from the interior toe region of the sock. Given the facts of this case, that is an insufficient showing to establish the relevance of the 2014 statement and require its admission. *See id.*

[¶22] The court did not explicitly discuss the testimony of the witness called by Bates who claimed that she saw the victim alive after Bates left the victim's apartment. That is likely because her testimony was clearly inadmissible at the section 2138 hearing in that it did not concern the new DNA evidence at all, but was simply an attempt to "reopen[] or supplement[] the evidence introduced in prior proceedings" by introducing a purported eyewitness account of Bates's whereabouts on the night of the murder. *Id.*

C.     Trial Court's Consideration of "All the Other Evidence In the Case"

[¶23] Bates finally contends that the court's decision demonstrates that it did not "consider[] . . . all the other evidence in the case, old and new" as mandated by the statute. 15 M.R.S. § 2138(10)(C)(1); *see Dechaine*, 2015 ME 88, ¶ 38, 121 A.3d 76 ("[E]vidence admitted at the trial or in any prior collateral proceeding . . . must be considered by the court in deciding a motion

for a new trial based on new DNA analysis."). He first points to the court's finding that "[a]lthough the trial transcript is not in the record, it appears that an alternative suspect theory regarding [the new alternate suspect] was not presented at trial."

[¶24] Bates asserts that the court was required to read the entire trial transcript in order to fulfill its statutory duty to consider all evidence in the case. We disagree. The statute requires that the evidence admitted at trial be "considered" sufficiently to place the new DNA evidence in context so as to determine whether a different verdict would likely result from a new trial. 15 M.R.S. § 2138(10)(C)(1). It does not specify any particular method that the court must employ in doing so, and we conclude that the nature of the required review depends upon the record in a particular case and the challenge raised in the motion for a new trial. Here, Bates's attorney's affidavit supports the court's finding that a theory regarding the new alternate suspect was not presented at trial, and the court's order, which includes an extensive review of the facts of the case as recited in our prior opinion, *see Bates*, 2003 ME 67, ¶¶ 2-8, 822 A.2d 1129, establishes that the court did sufficiently consider evidence that was admitted at the trial.

[¶25]   Bates lastly advances as error a seeming contradiction in the court's decision, where the court first found that "post[-]trial DNA evidence has been found that could not have been contributed by the defendant . . . on a sock found in the victim's mouth," and later found that "[a]lthough [Bates's attorney] claims there was unknown male DNA on the sock, there are no new results from the sock because it was not tested."  Bates asserts that the court's exclusion of evidence concerning the new alternate suspect was predicated on "its confusion over the existence of any new DNA results."

[¶26]  Read in context, the court's findings are not contradictory and they reveal no error.  The second finding was that

> [b]ecause evidence regarding [the new alternate suspect] is . . . new evidence, it must be relevant to the DNA testing or to the identity of the source of the DNA sample.  As discussed above, the new DNA results were . . . inconclusive . . . .  Although [Bates's attorney] claims there was unknown male DNA on the sock, there are no new results from the sock because it was not tested.  Any evidence regarding [the new alternate suspect] should therefore be excluded from the hearing because the DNA results do not implicate [him].

[¶27]  It is apparent to us that the "inconclusive" results to which the court referred were the results of Bode's testing excluding the new alternate suspect from the Y-STR profile found on the exterior of the sock and neither including nor excluding him from the Y-STR profile found on the sock's interior toe region.  As we have discussed, that result was of little value given the facts

of this case. *See supra* ¶¶ 6, 12-13. The court then found, correctly, that nothing in the Bode results identified the new alternate suspect as a contributor to the sock DNA because the sock was "not tested" using a method more precise than Y-STR, such as PCR testing.[7] For that reason, the court found that the "DNA results do not implicate [the new alternate suspect]" and properly excluded evidence concerning him as not "relevant to the identity of the source of the DNA sample," *see* 15 M.R.S. § 2138(10).

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Foster Bates

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Superior Court docket number CR-2001-1160
FOR CLERK REFERENCE ONLY

---

[7] At oral argument, Bates and the State agreed that PCR testing is much more precise and definitive than Y-STR testing, which examines only the male chromosome and is, as we have discussed, useful for excluding potential contributors but much less useful for identifying them. *See supra* ¶ 13.